**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

GLEN R. DAVIS,

    Appellant,

     v.

DEPARTMENT OF THE NAVY,

    Agency.

DOCKET NUMBER
DA-0752-14-0285-I-1

DATE: July 5, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Bobby Devados</u>, Esquire, Dallas, Texas, for the appellant.

<u>John M. Sessoms</u>, New Orleans, Louisiana, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1  The appellant has filed a petition for review of the initial decision, which sustained his demotion. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2 On petition for review, the appellant contends that the statements in the record do not support the agency's charge of inappropriate conduct. Petition for Review (PFR) File, Tab 1. He further argues that the administrative judge erred in finding that the agency did not violate his due process rights and that the penalty should have been mitigated. *Id*. The appellant also submits additional documents postdating the close of the record. PFR File, Tabs 1-2. According to the appellant, the attached documents show that the agency representative tampered with witnesses and ordered the destruction of evidence; namely, the audio recordings of the in-person interviews conducted by Lieutenant Colonel (LtCol) M.J. during the initial command investigation. PFR File, Tab 1. In its response, the agency argues that the administrative judge's findings were correct and that the documentary submissions on petition for review are not new and material. PFR File, Tab 4.

The appellant's new documentary submissions do not establish that the agency tampered with witnesses or destroyed evidence and do not warrant further review.

¶3 The first attachment to the appellant's petition for review purports to be a transcript of a recorded conversation between the appellant and Colonel (Col) J.F., including a discussion of alleged witness intimidation. PFR File, Tab 1 at

23-27.  The transcript is undated and of unknown provenance, and it is unclear whether the conversation was recorded with Col J.F.'s consent.  In any event, the document carries less probative weight than the sworn declaration from the agency representative, who specifically denied asking any witnesses to recant their statements.  IAF, Tab 22 at 13; *see Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83‑87 (1981) (listing factors to be considered in weighing hearsay evidence, among them whether the statements are in affidavit form).  The transcript therefore provides no basis for further review.  *See Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).

¶4      The appellant also submits what appear to be transcripts of two telephone conversations he had: one with LtCol M.J., and one with Col K.S.  PFR File, Tab 1 at 158-59, Tab 2 at 4-5.  In both conversations, the appellant requests audio recordings of in‑person interviews LtCol M.J. conducted during the command investigation and is informed that the recordings have been destroyed.  *Id*.  The agency concedes that it was an "oversight of discovery" that the recordings were not provided to the appellant.  PFR File, Tab 4 at 9.  However, as the agency notes, the appellant was aware of the existence of the recordings, which were mentioned in LtCol M.J.'s report of the command investigation.  His remedy for the agency's omission was to file a motion to compel under 5 C.F.R. § 1201.73(c), which he failed to do.  Hence, he failed to preserve his right to discovery of these recordings.  *See Brown v. Tennessee Valley Authority*, 45 M.S.P.R. 144, 145 (1990), *aff'd*, 928 F.2d 412 (Fed. Cir. 1991).  In any case, the appellant was not prejudiced by the agency's failure to provide the audio recordings because he had ample opportunity below to obtain additional statements from those same witnesses.  Hence, assuming arguendo that the transcripts of the appellant's conversations with LtCol M.J. and Col K.S. are authentic and legally obtained, they do not warrant a different result.

¶5      The appellant also has attached materials relating to the Board of Inquiry (BOI) proceeding concerning his retention in the U.S. Marine Corps Reserve. The documents include a transcript of the BOI hearing, PFR File, Tab 1 at 28–157, and additional materials submitted by the Detailed Defense Counsel to the Secretary of the Navy, PFR File, Tab 2 at 6-88.  The transcript contains testimony from various witnesses, including LtCol M.J., Ms. X, Major (Maj) M.H., and the appellant, concerning the events at issue in this appeal, but the appellant has not identified any testimony he could not have obtained before the close of the record below.  *See Grassell v. Department of Transportation*, 40 M.S.P.R. 554, 564 (1989) (finding that, to constitute new and material evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed).  The additional materials contain attorney argument, various documents already contained in the record, and another transcript of the conversation between the appellant and LtCol M.J.  *Id*.  Again, we find the documents do not contain new and material information, and therefore provide no basis for further review.

The administrative judge correctly sustained the charge and specifications.

¶6      Under specification (a), the agency alleged that the appellant engaged in inappropriate conduct by showing nude photos of a subordinate employee, Ms. X, to another subordinate employee.  Initial Appeal File (IAF), Tab 6 at 30.  In his sworn statement, the appellant related that, on the night of January 12, 2013, while he was out drinking with some associates following the Wilmington, North Carolina muster, he received a text from Staff Sergeant (SSgt) S.N., containing at least one image of a faceless, topless female.  *Id*. at 22.  The appellant stated that the text indicated that the photo or photos depicted Ms. X.  *Id*.  The appellant acknowledged that he showed at least one such photo to Mr. G.L., which Mr. G.L. confirmed in his own sworn statement.  *Id*. at 22, 25.  The appellant related that, on the following morning, "when sobriety returned," he deleted the text,

5

instructed SSgt S.N. to destroy the file, and asked Mr. G.L. to "try to put out of his mind anything he had seen." *Id*. at 22. We agree with the administrative judge that the appellant's admitted conduct in this matter was inappropriate.

¶7        Under specification (b), the agency alleged that, during a dinner in March 2013, the appellant picked up Ms. X's personal cell phone without her permission and attempted to access it. IAF, Tab 6 at 30. In her declaration, Ms. X recalled that the appellant was intoxicated, that he picked up her personal cell phone and attempted to access it, and that she grabbed the phone back and said "give me back my phone" or words to that effect. IAF, Tab 20 at 6. Sergeant (Sgt) C.S., who also attended the dinner, stated in his declaration that he recalled Ms. X grabbing her cell phone away from the appellant and stating "give me back my phone" or words to that effect. *Id*. at 8. SSgt C.S. further recalled that the incident took only a few seconds and did not raise any red flags at the time. In his own affidavit, the appellant categorically denied the accusation. IAF, Tab 19 at 23. The administrative judge credited the agency's version of events, finding that SSgt C.S. was a disinterested observer and that his statement was entitled to substantial weight. ID at 12; *see Borninkhof*, 5 M.S.P.R. at 87.

¶8        On review, the appellant contends that the administrative judge failed to consider the statements of three other attendees, SSgt S.N., SSgt M.L., and SSgt J.S., each of whom denied witnessing the appellant take Ms. X's phone. IAF, Tab 19 at 11, 13, 18; *see* PFR File, Tab 1 at 6-8. However, the administrative judge's failure to mention all the evidence of record does not mean that she did not consider it in reaching her decision. *Marques v. Department of Health & Human Services*, [22 M.S.P.R. 129](), 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). In any event, the statements by SSgt S.N., SSgt M.L., and SSgt J.S. do not carry sufficient weight to warrant a different result. First, their statements are unsworn, whereas Ms. X and Sgt C.S. made their statements under penalty of perjury. *See Borninkhof*, 5 M.S.P.R. at 87. Furthermore, in subsequent sworn statements, SSgt S.N. admitted that he did not watch the

appellant and Ms. X for "every minute" of the dinner, and SSgt M.L. conceded that "[i]t could have been possible that [the appellant] looked at Ms. [X.]'s phone without me seeing it while I was at the table during dinner." IAF, Tab 20 at 18, 20.[2] We therefore find no grounds to disturb the administrative judge's finding that the appellant took and attempted to access Ms. X's cell phone.

¶9     Specification (c) concerns the appellant's alleged inappropriate remarks about Ms. X's breasts at a meeting with other Marines in attendance in October 2013. IAF, Tab 6 at 31. In her declaration, Maj M.H. recalled attending a meeting in the appellant's office in early October 2013 regarding making a video for the Readiness Support Program. Consistent with the version of events Ms. X described in her signed statement, Maj M.H. specifically recalled the appellant stating that if Ms. X "gave the brief in a sweater vest no one would listen since they would be focusing on her breasts," and that he "lost a bet whether they were real." IAF, Tab 10 at 9. In his own affidavit, the appellant categorically denied making the remarks. IAF, Tab 19 at 24. He also provided an undated statement by SSgt S.N. and a statement by Mr. T.N., both of whom denied hearing the alleged comments. IAF, Tab 19 at 11, 12. Both statements were unsworn, however. Moreover, in his statement, SSgt S.N. recalled attending the "S-3 Operation meeting . . . in the small conference room." *Id*. at 11. Thus, it appears SSgt S.N. may have been remembering a different meeting than the one in question. Furthermore, in a subsequent sworn statement, Mr. T.N. stated that he did not recall making the earlier statement and did not know to what meeting it referred. IAF, Tab 20 at 17. Considering that Maj M.H. was a disinterested observer and that her account is consistent with the signed statement provided by

---

[2] In his declaration, the agency representative related that, during a May 14, 2014 interview, SSgt J.S. admitted the event could have taken place without him seeing it. IAF, Tab 20 at 16. However, SSgt J.S. did not himself make a written statement to that effect. *Id*.

Ms. X, we discern no error in the administrative judge's decision to credit Maj M.H.'s sworn statements over those of the appellant.

¶10    Specification (d) concerns the October 25, 2013 conversation between the appellant and Ms. X in which the appellant allegedly threatened to harm himself. IAF, Tab 6 at 31. The only direct witnesses to the event were Ms. X, who provided an unsworn statement, and the appellant, who provided an affidavit in which he "categorically" denied the accusation, and stated that he only told Ms. X "how badly [he] felt about this whole issue." *Id*. at 18; IAF, Tab 19 at 24. We agree with the appellant that Ms. X's unsworn statement, standing alone, carries less weight than his own affidavit, notwithstanding his failure to specifically deny each detail of Ms. X's account. However, Ms. X's statement is corroborated by the unsworn statement of Maj M.H., who related that the appellant had expressed suicidal thoughts to both Ms. X and herself. IAF, Tab 22 at 29. In addition, the appellant's assertion that he merely told Ms. X "how badly [he] felt" is contradicted by the statements of Ms. S.G., who averred under penalty of perjury that the appellant appeared "emotional and upset" after meeting with Ms. X, and Maj M.H., who declared under penalty of perjury that the appellant appeared "distraught" after the meeting. IAF, Tab 20 at 9, 11. While this is a somewhat close case, we find that the administrative judge did not err in sustaining the specification. Accordingly, we find that the administrative judge properly sustained the charge.

The administrative judge correctly found that the agency did not violate the appellant's due process rights.

¶11    An employee's constitutional due process rights may be violated if a deciding official considers new and material information in assessing the charges or when deciding on a penalty. *Ward v. U.S. Postal Service*, 634 F.3d 1274 (Fed. Cir. 2011). In determining whether a due process violation occurred, the Board must consider the facts and circumstances of each case. *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1377 (Fed. Cir. 1999). Among the factors

to be considered are whether: (1) the additional material merely introduced "cumulative" information or new information; (2) the employee knew of the error and had a chance to respond to it; and (3) the information was of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Id*. Ultimately, the inquiry is whether the deciding official's consideration of the additional material was substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property absent an opportunity to respond. *Id.*

¶12    The appellant contends that the agency violated his due process rights by failing to provide him with LtCol M.J.'s December 6, 2013 update to the command investigation, which included the written interview with Maj M.H.; Col J.F.'s *Douglas* factor worksheet; and Col J.F.'s summary of the command investigation. It is undisputed that the appellant did not receive these documents prior to the effective date of his demotion. However, as the administrative judge found, the deciding official, Mr. G.H., never saw or considered these documents. In his declaration, Mr. G.H. stated under penalty of perjury that, when making his decision, he considered only the January 13, 2014 proposal letter, LtCol M.J.'s initial command investigation report, and the appellant's response to the proposed action. IAF, Tab 22 at 17. Mr. G.H. further declared that he did not see LtCol M.J.'s update to the command investigation until June 20, 2014. *Id*. Col K.S. confirmed in his own declaration that the initial command investigation report was the only document he gave to Mr. G.H. IAF, Tab 23 at 7.

¶13    The appellant also objects that he did not receive notes or other documentation of witness interviews conducted by the agency representative following the appellant's response to the proposal notice. PFR File, Tab 1 at 12. The agency representative has acknowledged that he conducted an interview with one witness, SSgt S.N., on February 18, 2014, during the period after the appellant responded to the proposal notice, and before the decision letter was issued. IAF, Tab 22 at 13; IAF, Tab 19 at 40. However, there is nothing in the

record to indicate that the deciding official received an ex parte communication concerning that interview or that SSgt S.N. made any material change to his testimony as a result of the interview. Thus, the interview does not raise any due process concerns. Furthermore, there is nothing in the record to suggest that Mr. G.H. listened to or received the audio recordings of the in-person interviews conducted by LtCol M.J. during the initial command investigation. Accordingly, we agree with the administrative judge that the appellant failed to establish a violation of his due process rights.

The administrative judge did not err in sustaining the demotion penalty.

¶14     The appellant further argues that the penalty of a six-grade demotion was outside the bounds of reasonableness. PFR File, Tab 1 at 14-16. In support of his claim, he cites *Chavez v. Small Business Administration*, 121 M.S.P.R. 168 (2014), in which the Board found that a 60-day suspension and a one‑grade demotion was the maximum reasonable penalty for a public affairs specialist found to have sent sexually oriented images and videos from his work computer. However, the misconduct at issue in this case is far more serious, in that the appellant shared a stolen nude image of his own subordinate employee with another subordinate employee. Moreover, in *Chavez*, the Board mitigated the penalty based in part on a finding that the misconduct took place in an environment in which such conduct was condoned. *Id.*, ¶ 17. That mitigating factor is not present here.

¶15     The appellant also reiterates his argument that the agency treated him more harshly than it did Mr. T.N., who also was shown the photos SSgt S.N. obtained from Ms. X's phone. PFR File, Tab 1 at 6. The Board has held that, to establish disparate penalties, the appellant must show that there is enough similarity between both the nature of the misconduct and other relevant factors to lead a reasonable person to conclude that the agency treated similarly situated employees differently. *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 15 (2010). If the appellant makes the required showing, then the agency

must prove a legitimate reason for the difference in treatment by a preponderance of the evidence before the penalty can be upheld. *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 (2012). Here, the record does not support a finding that Mr. T.N. was similarly situated to the appellant. First, during the time frame in which the appellant was investigated and disciplined, Mr. T.N. was a civilian contractor, not an agency employee like the appellant. Second, unlike the appellant, Mr. T.N. was not Ms. X's supervisor. Third, it is undisputed that, unlike the appellant, Mr. T.N. did not show the photos of Ms. X to anyone else. Fourth, Mr. T.N. was not accused of making inappropriate comments about Ms. X's breasts during a meeting with other Marines in attendance. Under these circumstances, a reasonable person would not conclude that Mr. T.N. was similarly situated to the appellant. Thus, the administrative judge correctly found that the appellant did not meet his burden of proof on his disparate penalties claim.

## NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
                Jennifer Everling
                Acting Clerk of the Board

Washington, D.C.